Nos. 24-1302, 24-1322, & 24-1491 (consolidated)

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

ORONDE SHELTON,

Appellant/Cross-Appellee.
_____

Appeals from the Judgment of Conviction and Sentence at Crim. No. 21-216
and from the Judgment Revoking Supervised Release at Crim. No. 09-232
Entered on February 14, 2024 by the United States District Court
for the Western District of Pennsylvania (Wiegand, J.)

---

**PRINCIPAL AND RESPONSE BRIEF FOR
APPELLEE/CROSS-APPELLANT UNITED STATES OF AMERICA**

---

TROY RIVETTI
Acting United States Attorney

ADAM N. HALLOWELL
Assistant U.S. Attorney
Attorney for Appellee/Cross-Appellant

700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
Tel:    (412) 644-3500
Fax:    (412) 644-6995
Email: Adam.Hallowell@usdoj.gov

# **TABLE OF CONTENTS**

JURISDICTION ..................................................................................1

ISSUES PRESENTED AND STANDARDS OF REVIEW .....................................3

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................6

STATEMENT OF FACTS AND OF THE CASE ....................................................7

    A.    Shelton Commits and Is Convicted of Three Felony
            Drug-Trafficking Offenses and Numerous Other Crimes
            Between 1990 and 2010. ......................................................7

    B.    While on Federal Supervised Release in 2021, Shelton Possesses
            a Machinegun and Fires It in Two Shooting Incidents.. .......................8

    C.    Shelton Pleads Guilty to Federal Firearm Crimes Under 18 U.S.C.
            §§ 922(g)(1) and 922(o). ..................................................10

    D.    The Court Rules That Shelton Is Not Subject to the 15-Year
            Minimum Sentence of the Armed Career Criminal Act, and
            Imposes a Total Prison Sentence of 177 Months (Including for
            the Supervised Release Violation).. ..................................................12

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT ..........................................................................................17

    I.    Shelton's Pennsylvania Drug-Trafficking Convictions Are Serious
         Drug Offenses Under the Armed Career Criminal Act, and So the
         District Court Erred by Not Applying ACCA's 15-Year Minimum
         Prison Sentence. ..................................................................17

         A.    Under *Brown v. United States*, the Court Erred by Looking
            to Federal Drug Schedules at the Time of Shelton's Instant
            Offense, Not at the Time of His Prior State Offenses. .............17

B.    Shelton's Cocaine-Trafficking Convictions Are Also Serious Drug Offenses for Two Additional Reasons. ..............20

    1.    Pennsylvania Drug Schedules Were Not Overbroad at the Time of Shelton's State Offenses Because They Did Not Prohibit Ioflupane....................................20

    2.    Because Pennsylvania Has Never Prosecuted (and Is Unlikely to Prosecute) Ioflupane Trafficking, Shelton Has Not Met and Cannot Meet the Realistic Probability Test................................................................23

C.    Because of the ACCA Error, Shelton's Sentence Must Be Vacated on Both Counts. ..........................................................25

II.    The U.S.S.G. § 2K2.1(b)(6)(B) Issue Is Moot, and in Any Event Shelton Used His Firearm in "Another Felony Offense" Because He Did Not Act in Self-Defense in the January 2021 Shooting. ........27

A.    The ACCA Error Moots the § 2K2.1(b)(6)(B) Issue Because That Issue Does Not Affect the Advisory Sentencing Guideline Range......................................................27

B.    In the Alternative, the Court Correctly Applied the Enhancement Because Shelton Used His Firearm in "Another Felony Offense." ......................................................28

    1.    When the Government Overcomes a Self-Defense Claim by a Preponderance of Evidence, § 2K2.1(b)(6)(B) Applies. ..............................................29

    2.    Shelton Did Not Act in Self-Defense in the January 2021 Shooting................................................................33

III.    Shelton's Procedural and Substantive Objections to His Non-ACCA Sentence are Moot, and Are Incorrect in Any Event......37

A.    The ACCA Error Moots Any Claim of Procedural and Substantive Error as to Shelton's Current Sentence. ................37

B.    To the Extent Shelton Argues That the Sentence Was Procedurally Unreasonable, He Is Incorrect, and Any Error Was Not Plain. ................................................................38

C.    Shelton's Sentence Was Not Substantively Unreasonable. ......41

IV.    The Court Correctly Denied Shelton's Motions to Withdraw His Plea and Dismiss the Indictment Because 18 U.S.C. §§ 922(g)(1) and 922(o) Do Not Violate the Second Amendment as Applied to Shelton or on Their Face. ...................................................................47

CONCLUSION ....................................................................................50

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bastardo-Vale v. Attorney General*, 934 F.3d 255 (3d Cir. 2019) (en banc) ..........39

*Brown v. United States*, 144 S. Ct. 1195 (2024)....................................15, 17, 18, 19

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................................47, 48

*Gall v. United States*, 552 U.S. 38 (2007) ................................................................4

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ....................................15, 20, 24

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ..................................................................30

*McNeill v. United States*, 563 U.S. 816 (2011)........................................................18

*Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025) ...............................................48, 49

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ......................................48

*Salmoran v. Attorney General*, 909 F.3d 73 (3d Cir. 2018) ....................................25

*Taylor v. United States*, 495 U.S. 575 (1990).....................................................18, 22

*Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155 (3d Cir. 2017)......................................1

*United States v. Abdullah*, 905 F.3d 739 (3d Cir. 2018) ....................................15, 28

*United States v. Aguirre-Miron*, 988 F.3d 683 (3d Cir. 2021) ................................40

*United States v. Alston*, 526 F.3d 91 (3d Cir. 2008)................................................43

*United States v. Ausburn*, 502 F.3d 313 (3d Cir. 2007)......................................39, 40

*United States v. Bentley*, No. 22-1834, 2023 WL 2300387
    (3d Cir. Mar. 1, 2023) ........................................................................................30

*United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011)..............................................5

*United States v. Brigman*, 350 F.3d 310 (3d Cir. 2003) ..........................................22

*United States v. Bungar*, 478 F.3d 540 (3d Cir. 2007) ........................16, 41, 45, 46

*United States v. Clark*, 726 F.3d 496 (3d Cir. 2013) ...............................................41

*United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006) ...........................................46

*United States v. Daniels*, 915 F.3d 148 (3d Cir. 2019) ...........................................3

*United States v. Dorsey*, 105 F.4th 526 (3d Cir. 2024) .......................................4, 5

*United States v. Eddington*, 65 F.4th 1231 (10th Cir. 2023) ..................................31

*United States v. Fitzgerald*, No. 08-2608, 2009 WL 1385930
    (3d Cir. May 19, 2009) .......................................................................................30

*United States v. Flores-Mejia*, 759 F.3d 253 (3d Cir. 2014) (en banc) ..................39

*United States v. Golden*, No. 21-2618, 2023 WL 2446899
    (3d Cir. Mar. 10, 2023) .......................................................................................28

*United States v. Gray*, 942 F.3d 627 (3d Cir. 2019) ................................................3

*United States v. Green*, 897 F.3d 173 (3d Cir. 2018) .............................................29

*United States v. Handerhan*, 739 F.3d 114 (3d Cir. 2014) .....................................46

*United States v. Hester*, 910 F.3d 78 (3d Cir. 2018) ..............................................30

*United States v. Jackson*, No. 23-1508, 2025 WL 80372
    (6th Cir. Jan. 13, 2025) .......................................................................................19

*United States v. James*, 928 F.3d 247 (3d Cir. 2019) .............................................49

*United States v. Keller*, 666 F.3d 103 (3d Cir. 2011) .............................................30

*United States v. Kluger*, 722 F.3d 549 (3d Cir. 2013) ...........................................45

*United States v. Limehouse*, 386 F. App'x 109 (3d Cir. 2010) ..............................28

*United States v. McIntosh*, 124 F.4th 199 (3d Cir. 2024) .......................................30

*United States v. Melvin*, 829 F. App'x 594 (3d Cir. 2020) .....................................46

*United States v. Mitchell*, 652 F.3d 387 (3d Cir. 2011) (en banc) .........................48

*United States v. Moore*, 111 F.4th 266 (3d Cir. 2024) ......................16, 47, 48, 49

*United States v. Napolitan*, 762 F.3d 297 (3d Cir. 2014) ......................30, 32, 36

*United States v. Naylor*, Crim. No. 21-398, 2024 WL 617659
 (W.D. Pa. Feb. 14, 2024) ...................................................................31

*United States v. Olano*, 507 U.S. 725 (1993) ..........................................40

*United States v. One (1) Palmetto State Armory PA-15 Machinegun
 Receiver/Frame*, 822 F.3d 136 (3rd Cir. 2016) ...................................48

*United States v. Payano*, 930 F.3d 186 (3d Cir. 2019) .......................26, 38

*United States v. Price*, 16 F.4th 1263 (7th Cir. 2021) ............................31

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ...................................49

*United States v. Riley*, 574 F. Supp. 3d 248 (E.D. Pa. 2021) ..................31

*United States v. Rivera-Santiago*, 919 F.3d 82 (1st Cir. 2019) ..............44

*United States v. Stevens*, 729 F. App'x 149 (3d Cir. 2018) ....................46

*United States v. Taylor*, 142 S. Ct. 2015 (2022) ...................................24

*United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc) ............41

*United States v. West*, 643 F.3d 102 (3d Cir. 2011) ..............................29

*United States v. Wilson*, 880 F.3d 80 (3d Cir. 2018) .............................28

*United States v. Wilson*, 75 F.4th 633 (6th Cir. 2023) ...........................31

*United States v. Winebarger*, 664 F.3d 388 (3d Cir. 2011) .............. 37, 38

## STATE CASES

*Commonwealth v. Bayard*, 309 A.2d 579 (Pa. 1973) ..............................32

*Commonwealth v. Collazo*, 180 A.2d 903 (Pa. 1962) .............................33

*Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009) .................30

*Commonwealth v. Hawkins*, No. 1184 MDA 2012, 2014 WL 10986149
 (Pa. Super. Feb. 7, 2014)................................................................32, 35

*Commonwealth v. Johnson*, 245 A.3d 1049 (Pa. Super. 2020) .........................33, 35

*Commonwealth v. Mouzon*, 53 A.3d 738 (Pa. 2012) ................................32

*Commonwealth v. Murray*, 260 A.3d 161 (Pa. Super. 2021) ..................................36

*Commonwealth v. Sanchez*, 82 A.3d 943 (Pa. 2013)........................................16, 32

*Commonwealth v. Ventura*, 975 A.2d 1128 (Pa. Super. 2009)...............................32

## UNITED STATES CONSTITUTION

U.S. Const. amend. II.................................................................................47

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1)............................................................................passim

18 U.S.C. § 922(o) ...............................................................................passim

18 U.S.C. § 924(a)(2)..................................................................................25

18 U.S.C. § 924(e) ...............................................................................passim

18 U.S.C. § 924(e)(1)...................................................................................17

18 U.S.C. § 924(e)(2)(A)(ii) .........................................................................17

18 U.S.C. § 3231 ...........................................................................................1

18 U.S.C. § 3553(a) ........................................................................41, 42, 46

18 U.S.C. § 3553(a)(2)(A) .............................................................................42

18 U.S.C. § 3553(a)(2)(B) .............................................................................42

18 U.S.C. § 3553(a)(3).............................................................................38, 42

18 U.S.C. § 3553(a)(4)...................................................................................38

18 U.S.C. § 3583(e)(3)....................................................................................1

21 U.S.C. § 841(a)(1)......................................................................................8

21 U.S.C. § 841(b)(1)(A)(i) ............................................................8

21 U.S.C. § 846 ..............................................................................8

28 U.S.C. § 1291 ............................................................................2

## STATE STATUTES

18 Pa. Cons. Stat. § 505 .........................................................27, 29

18 Pa. Cons. Stat. § 505(a) ..........................................................31

18 Pa. Cons. Stat. § 505(b)(2) .................................................16, 32

18 Pa. Cons. Stat. § 505(b)(2) .................................................34, 36

18 Pa. Cons. Stat. § 505(b)(2.3) ...................................................33

18 Pa. Cons. Stat. § 505(b)(3) .......................................................16

18 Pa. Cons. Stat. § 1104 ..............................................................30

18 Pa. Cons. Stat. § 2702(a)(1) ............................................28, 29, 30

18 Pa. Cons. Stat. § 2702(a)(4) ............................................28, 29, 30

18 Pa. Cons. Stat. § 2705 .....................................................28, 29, 30

35 Pa. Cons. Stat. § 780-104(2)(i)(4) .....................................passim

35 Pa. Cons. Stat. § 780-113(a)(30) ...............................................7

## STATE SESSION LAWS

Act No. 64, 972 Pa. Laws 233, 241 ...............................................21

## FEDERAL RULES

Fed. R. Crim. P. 11(d)(2)(B)..........................................................49

Fed. R. Crim. P. 52(a) ..................................................................26

## RULES OF COURT

Third Circuit Internal Operating Procedure § 9.1 ............................................. 16, 48

## FEDERAL REGULATIONS

21 C.F.R. § 1308.12(b)(4) ................................................................................23, 25

21 C.F.R. § 1308.12(b)(4)(ii) ..........................................................................18, 22

Schedules of Controlled Substances: Removal of [$^{123}$I]Ioflupane from
    Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54,715
    (Sep. 11, 2015) ......................................................................................19, 21, 22

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2K2.1 ..............................................................................................25, 30

U.S.S.G. § 2K2.1(b)(6)(B) ................................................................................passim

U.S.S.G. § 3D1.2 ....................................................................................................25

U.S.S.G. § 4B1.4 ..............................................................................................25, 27

U.S.S.G. § 4B1.4(b)(3)(A) .............................................................25, 26, 28, 50

U.S.S.G. § 4B1.4(c)(2) ...................................................................25, 26, 50

U.S.S.G. ch. 5 pt. A ...............................................................................................27

## OTHER AUTHORITIES

*Random House Dictionary* (1971 ed.) ...................................................................22

## **JURISDICTION**

These three appeals are from judgments in two criminal actions involving Appellant/Cross-Appellee Oronde Shelton.

Appeal No. 24-1302 is a direct appeal from Shelton's judgment of conviction and sentence in Crim. No. 21-216. Appx16-23.[1] The district court had jurisdiction by virtue of 18 U.S.C. § 3231. Shelton timely filed two notices of appeal from this judgment. Appx1 (notice filed by clerk); Appx3 (pro se notice).

Appeal No. 24-1322 is a direct appeal from the judgment revoking Shelton's supervised release in Crim. No. 09-232, based on the same conduct that led to his convictions at Crim. No. 21-216, and imposing sentence. Appx14-15. The district court had jurisdiction by virtue of 18 U.S.C. §§ 3231 and 3583(e)(3). Shelton timely noticed his appeal from this judgment. Appx2.

The notices of appeal in Nos. 24-1302 and 24-1322 are valid even though they misstate the date, and in two instances the docket number, of the relevant judgments. *See, e.g.*, *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 163 (3d Cir. 2017). The

---

[1] "Appx" refers to the Appendix filed by Shelton. "SAppx" refers to the Supplemental Appendix filed by the United States. "PSR" refers to the Presentence Investigation Report in Crim. No. 21-216 (W.D. Pa.). Docket numbers refer to Crim. No. 21-216 unless otherwise noted. All record citations refer to the transcript of the pretrial hearing held on February 1 and 2, 2023, unless otherwise indicated or evident from context. *See* Appx368-598.

appeals in Nos. 24-1302 and 24-1322 were consolidated for all purposes by this Court's order of April 19, 2024 (Dkt. No. 13, 3d Cir. No. 24-1302).

Appeal No. 24-1491 is a cross-appeal from Shelton's judgment of conviction and sentence in Crim. No. 21-216. Appx16-23. Appellee/Cross-Appellant the United States of America timely noticed this cross-appeal. Appx4.

This Court has jurisdiction to decide the appeals and cross-appeal pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

I.    Whether the district court erred in finding that the Armed Career Criminal Act did not apply to Shelton when, as the Government argued, Shelton's prior Pennsylvania cocaine-trafficking offenses were ACCA predicates because Pennsylvania and federal drug schedules matched at the time of those offenses.[2]

This issue was preserved. Appx691-93 (sentencing memorandum); Appx234-51 (response to motion to strike); Appx775-77 (sentencing transcript). Review of legal rulings is plenary. *United States v. Daniels*, 915 F.3d 148, 150 (3d Cir. 2019).

II.    Whether the court clearly erred in finding that Shelton used a firearm "in connection with another felony offense" under U.S.S.G. § 2K2.1(b)(6)(B), when Shelton committed aggravated assault and reckless endangerment by shooting at an assailant in violation of his duty to retreat under Pennsylvania self-defense law.

This issue was preserved. Appx642 (objections to Presentence Report); Appx652-56 (sentencing memorandum). Factual findings as to sentencing enhancements are reviewed for clear error, and review of legal rulings is plenary. *United States v. Gray*, 942 F.3d 627, 630-31 (3d Cir. 2019).

---

[2] For the Court's convenience, the Government addresses the issue in its cross-appeal (No. 24-1491) as Issue I, because that issue is logically prior to the sentencing issues raised in Shelton's brief. Issues II, III, and IV in the Government's brief correspond to Issues I, II, and III in Shelton's opening brief (which pertain to Appeals Nos. 24-1302 and 24-1322).

III.    Whether the court abused its discretion substantively or plainly erred procedurally when it varied upward from the advisory Sentencing Guideline range to the statutory maximum prison sentence for his firearm crimes, and imposed a revocation prison term at the top of the advisory Guideline range, because of Shelton's recidivism and his dangerous conduct in arming himself with a machinegun while on supervised release.

The claim of substantive error was preserved. Appx809-10 (sentencing transcript). This Court reviews a sentence's substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). The claim of procedural error was forfeited. Appx86-87. Unpreserved arguments are reviewed for plain error. *United States v. Dorsey*, 105 F.4th 526, 528 (3d Cir. 2024).

IV.    Whether the district court correctly denied Shelton's motions to withdraw his plea and dismiss the indictment because 18 U.S.C. §§ 922(g)(1) and 922(o) satisfy the Second Amendment as applied to Shelton's conduct of possessing a machinegun while on federal supervised release, and whether §§ 922(g)(1) and 922(o) plainly violate the Second Amendment on their face.

Shelton preserved this issue, but only as to his arguments that §§ 922(g)(1) and 922(o) violate the Second Amendment as applied to him. Appx701-12, 715-17 (motions to dismiss charges); Appx713-14 (motion to withdraw plea). On review of a motion to dismiss an indictment, this Court exercises plenary review of legal

4

rulings and reviews factual findings for clear error. *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011). Shelton forfeited his arguments that §§ 922(g)(1) and 922(o) violate the Second Amendment on their face. *See* Appx701-17. Unpreserved arguments are reviewed for plain error. *Dorsey*, 105 F.4th at 528.

## <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

These cases have not been before this Court previously.  Counsel is not aware of any other related case or proceeding – completed, pending, or anticipated – before this Court or any other court or agency, state or federal.

## STATEMENT OF FACTS AND OF THE CASE

**A.    Shelton Commits and Is Convicted of Three Felony Drug-Trafficking Offenses and Numerous Other Crimes Between 1990 and 2010.**

As Shelton testified in this case, his extensive criminal record dates to the 1990s, when he "was a gang member" in Pittsburgh involved in "gang banging" and sometimes in drug dealing.  Appx522.  In 1990, police approached Shelton during a drug sale and found two bags of crack cocaine in his jacket pockets.  PSR ¶ 31.  In 1991, Shelton was arrested in possession of crack cocaine packaged for sale.  PSR ¶ 32.  Based on those incidents, Shelton pleaded guilty in two separate cases in Allegheny County, Pennsylvania, to possessing cocaine with intent to deliver, a felony under 35 Pa. Cons. Stat. § 780-113(a)(30); he received concurrent prison sentences of 6 to 12 months.  PSR ¶¶ 31-32; *see* Appx191-94 (charging documents).

In another 1991 episode, Shelton fired twenty shots at a police officer and led officers on a high-speed chase, leading to his conviction for reckless endangerment.  PSR ¶ 33.  In 1999, after another high-speed chase, officers found a loaded pistol in Shelton's car; Shelton pleaded guilty to possessing a firearm while a convicted felon and other crimes.  PSR ¶ 39.  Shelton incurred five other convictions in the 1990s, including reckless driving in yet another high-speed chase.  PSR ¶¶ 34-38.

In 2004, Shelton was driving with amphetamines in his system and a blood-alcohol level of .213% – and with a fraudulent driver's license – when he crashed his Corvette, killing one of his passengers.  PSR ¶ 40.  Shelton pleaded guilty to

7

homicide by vehicle during a DUI, involuntary manslaughter, forgery, and other offenses, and was sentenced to 2½ to 5 years in prison.  PSR ¶¶ 40-41.

After his release from prison, Shelton conspired to distribute large amounts of heroin.  PSR ¶ 43.  An associate made six trips to New Jersey on Shelton's behalf, purchasing heroin valued at between $30,000 and $80,000 on each trip; Shelton distributed the heroin through a co-conspirator, at times directing the conspiracy from jail.  PSR ¶ 43.  Shelton was charged federally at Crim. No. 09-232 for conspiring under 21 U.S.C. § 846 to distribute and possess with intent to distribute a kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i).  SAppx1 (indictment).  In 2010, Shelton pleaded guilty and was sentenced to 121 months in prison (later reduced to 120 months), followed by ten years of supervised release.  SAppx2-4 (judgment); *see* SAppx8 (order reducing sentence).

## B.    While on Federal Supervised Release in 2021, Shelton Possesses a Machinegun and Fires It in Two Shooting Incidents.

In 2018, Shelton was released from prison and began serving his supervised release term in Crim. No. 09-232.  *See* SAppx9 (revocation petition).  In late 2020 or early 2021, Shelton armed himself with a 9-millimeter Glock pistol and began to carry it on his person.  Appx528-29, 551-52, 558-59.  By January 2021, he had equipped the pistol with an auto sear attachment (or "Glock switch") that enabled it to fire fully automatically as a machinegun.  *See* Appx382; *see also* Appx634-37 (plea transcript).  Shelton claimed that he obtained the pistol because he had heard

he was in danger from unidentified individuals who believed (incorrectly, Shelton insists) that he once cooperated with law enforcement.    Appx527-29, 547-50. Shelton never mentioned that purported fear to the police or to his probation officer. *See* Appx445-55 (testimony of Probation Officer Tara Kessler).

Shelton fired the pistol in two incidents, one of which occurred on January 24, 2021 outside Shelton's mother's house.    Appx529; *see* Appx599 (map).    According to Shelton, he was walking to the porch when he heard "a shot or two."    Appx530, 551.    The assailant was in a moving car and had shot at a passing SUV that resembled a vehicle Shelton owned.    Appx530-31.    Shelton testified that he remained in the yard as the shooter's car returned past the house (which is on a dead-end street) and that he saw a person "coming out the window" of the car with a gun.    Appx530-31, 552.    Shelton shot at the car with his automatic Glock pistol, and the car drove away. Appx530, 550-51.[3]    A ShotSpotter report and police investigation confirmed that the incident began with an initial shot, followed by "a rapid fire shooting" "one minute" later.    Appx382, 409 (testimony of Det. Song); *see* Appx376-83, 404-12.

The second incident occurred on the afternoon of March 17, 2021.    Appx384. While Shelton was in slow-moving traffic in the left lane of a one-way, two-lane street with concrete barriers to his left, another driver overtook him in the right lane,

---

[3] A police detective testified that multiple witnesses had contradicted Shelton's story and told investigators that, after the initial shot, a person came out of Shelton's mother's house and fired a volley of bullets.    Appx407.

9

stopped, and fired several shots at him. Appx Vol. IV (ch04_
20210317151625.mp4 ("ch04") at 15:18:01-07) (surveillance video). Shelton
returned fire with his automatic Glock pistol, firing twenty-six rounds through his
windshield. *See* Appx532-37, 553-57. Shelton then sped forward and turned onto a
side street, eventually evading the assailant. *See* Appx634-36 (plea transcript).

A federal agent swore out a complaint charging Shelton with possessing a
firearm while a convicted felon in violation of 18 U.S.C. § 922(g)(1). *See* Appx25-
27 (docket entries) (Dkt. Nos. 5, 6). Weeks later, Shelton was arrested on that
complaint at his mother's house. Appx636 (plea transcript). In a warrant-based
search of the house, agents discovered the automatic Glock pistol. Appx636-37.
The pistol had moved in interstate commerce, as had the ammunition Shelton fired
in the March shooting. Appx637. Shelton was aware of his felon status. Appx637.

## C. Shelton Pleads Guilty to Federal Firearm Crimes Under 18 U.S.C. §§ 922(g)(1) and 922(o).

Shelton was initially charged in Crim. No. 21-216 with violating § 922(g)(1)
in a one-count indictment that invoked the Armed Career Criminal Act, 18 U.S.C.
§ 924(e). Appx113-15. Meanwhile, the U.S. Probation Office filed a petition to
revoke Shelton's supervised release in Crim. No. 09-232. SAppx9-10.

Shelton moved to strike the indictment's reference to ACCA in Crim. No. 21-
216, arguing that his two Pennsylvania cocaine convictions from the 1990s were not
ACCA predicates because they did not categorically involve a federally controlled

10

substance. Appx187-90. Shelton claimed that Pennsylvania's drug schedules at the time of those convictions "include[d] the [cocaine] derivative ioflupane," and were thus broader than the federal drug schedules at the time of his instant federal offense. Appx198; *see* Appx221-27.[4]   The Government responded that Shelton's Pennsylvania convictions were serious drug offenses for several reasons, including that ACCA implicated the federal schedules at the time of Shelton's prior convictions, when the Pennsylvania and federal schedules categorically matched. Appx248-50. The court denied Shelton's objection as premature, without prejudice to renewal at sentencing. Appx34-35 (docket entries) (Dkt. No. 75) (text order).

Shelton was then charged in a two-count superseding indictment with one count of violating § 922(g)(1) and one count of possessing a machinegun under 18 U.S.C. § 922(o). Appx312-16. The superseding indictment reiterated that the § 922(g)(1) count was subject to ACCA's enhanced penalties. Appx314, 316.

The Government filed a pretrial motion to preclude Shelton from raising a defense of justification or self-defense to the §§ 922(g)(1) and 922(o) charges. Appx340-44. After a two-day evidentiary hearing, *see* Appx348-598, the court granted the Government's motion, finding that Shelton had not shown that he faced "a present threat of harm" for the entire four-month period that he possessed the

---

[4] In this case, the parties and the district court have used the term "ioflupane" to refer to [$^{123}$I]ioflupane. The prefix [$^{123}$I] specifies that the iodine in the molecule is the radioactive isotope 123-iodine. This brief follows that convention.

automatic Glock pistol and had a "legal alternative" to his illegal possession. Appx603-13 (opinion). Shelton then pleaded guilty to both counts of the superseding indictment without a plea agreement. *See* Appx633-40 (plea transcript).

After his guilty plea but before sentencing, Shelton moved to dismiss both counts, claiming that § 922(o) and § 922(g)(1) violated the Second Amendment as applied to his conduct. Appx701-12, 715-17. He also moved to withdraw his guilty plea based on these arguments. Appx713-14. The district court denied the motions, finding that the statutes were constitutional as applied because Shelton's many prior convictions showed him to be dangerous and because the Second Amendment does not protect the possession of a machinegun. Appx8-10 (memorandum order).

**D.    The Court Rules That Shelton Is Not Subject to the 15-Year Minimum Sentence of the Armed Career Criminal Act, and Imposes a Total Prison Sentence of 177 Months (Including for the Supervised Release Violation).**

In a Presentence Report, the Probation Office found that Shelton was subject to ACCA because he had three qualifying predicates: his two Pennsylvania cocaine-trafficking convictions and his federal heroin conviction. PSR ¶ 26. The Presentence Report calculated a statutory range of 15 years to life in prison on the § 922(g)(1) count and 0 to 10 years on the § 922(o) count. PSR ¶ 91. Under ACCA, Shelton's advisory Sentencing Guideline range was 210 to 262 months, capped at 10 years on the § 922(o) count. PSR ¶ 92.

Shelton argued that he was not subject to ACCA, raising the same arguments as in his pretrial motion. Appx643-49 (objection to Presentence Report). The Government repeated its objections from the pretrial briefing, Appx691-93 (sentencing memorandum), and also argued that Pennsylvania drug schedules were not overbroad because Pennsylvania did not criminalize ioflupane at all. Appx775-77 (sentencing transcript). The court sustained Shelton's objection to ACCA status. Appx779-86; *see also* Appx48 (docket entries) (Dkt. No. 187) (indicative ruling). It found that "Pennsylvania's definition of cocaine" was "broader" than federal drug schedules because it included ioflupane; it also looked to federal schedules at the time of Shelton's instant federal offense in 2021 and rejected the Government's other arguments. Appx782 (sentencing transcript); Appx779-86.

The Presentence Report also found that Shelton was subject to U.S.S.G. § 2K2.1(b)(6)(B) for using a firearm "in connection with another felony offense," because he fired the pistol in the January and March 2021 incidents. PSR ¶ 21. Shelton objected that the § 2K2.1(b)(6)(B) enhancement did not apply because he acted in self-defense on each occasion, Appx643, 698-99 (sentencing filings), but the court disagreed and applied the enhancement. Appx778-79 (sentencing transcript). Under the court's sentencing rulings, Shelton faced a statutory range of 0 to 10 years in prison on each count and an advisory Guideline range of 51 to 63 months. Appx787-88; *see* Supplemental Addendum to PSR.

At sentencing, Shelton requested a sentence within the calculated 51-to-63-month Guideline range, Appx810-11 (transcript), although he had previously requested a lower sentence. *See* Appx670 (sentencing memorandum). Given the court's ruling on ACCA, the Government requested an upward variance to a 15-year prison sentence, with some or all of the prison terms for each count running consecutively to each other. Appx804-05 (sentencing transcript); *see* Appx789-805.

The district court varied upward to a statutory maximum prison sentence of 120 months (10 years) on each count, to run concurrently, and to be followed by three years of supervised release. Appx823-24. The court emphasized Shelton's dangerous conduct in arming himself "with a very dangerous machine gun" "on multiple occasions when he was going about his daily business" – and in firing the machine gun "more than once," including "in a well-populated area" in the March 2021 shooting. Appx828. The court also emphasized Shelton's "history of violating provisions of court supervision and returning to criminal conduct" and observed that he was "not learning his lesson." Appx829. The court also revoked Shelton's supervised release in Crim. No. 09-232 and sentenced him to a prison term of 57 months, consecutive to his 120-month sentence at Crim. No. 21-216. Appx831-35.

Shelton timely filed notices of appeal at Crim. Nos. 21-216 and 09-232. Appx1, 2. The Government timely cross-appealed in Crim. No. 21-216. Appx4.

## SUMMARY OF ARGUMENT

I.     This Court should reverse the district court's finding that ACCA did not apply, vacate Shelton's sentence, and remand for resentencing.  The court erred in  ruling that ACCA's definition of "serious drug offense" implicated federal drug schedules at the time of Shelton's instant federal offense.  The Supreme Court recently held to the contrary in *Brown v. United States*, ruling that a prior conviction satisfies this definition "if it involved a drug that was on the federal schedules when the defendant possessed or trafficked in it but was later removed."  144 S. Ct. 1195, 1201 (2024). Because the relevant Pennsylvania and federal drug schedules matched at the time of Shelton's prior Pennsylvania cocaine-trafficking convictions, those offenses are serious drug offenses.  Shelton is also subject to ACCA for two independent reasons: Pennsylvania law does not in fact criminalize ioflupane, and Shelton has not met and cannot meet his burden of showing a "realistic probability" of a Pennsylvania ioflupane prosecution.  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  For each of these reasons, this Court should therefore vacate Shelton's sentence on both counts.

II.     Shelton challenges his Guideline enhancement under U.S.S.G. § 2K2.1(b)(6)(B) – but that issue is moot because it will have no effect on Shelton's Guideline range under ACCA.  This Court thus should not address § 2K2.1(b)(6)(B). *See, e.g.*, *United States v. Abdullah*, 905 F.3d 739 (3d Cir. 2018).

15

In any event, § 2K2.1(b)(6)(B) applies to Shelton because he used a firearm "in connection with another felony offense" by firing the automatic Glock pistol in the January 2021 incident. Although Shelton's assailant fired first, Shelton did not act in self-defense in that instance because he violated his "duty to retreat" under Pennsylvania law: rather than retreat into the house, he waited in the yard to shoot at his assailant. *Commonwealth v. Sanchez*, 82 A.3d 943, 980 (Pa. 2013); *see* 18 Pa. Cons. Stat. §§ 505(b)(2), (b)(2.3). Although the district court's specific reasoning was incorrect, Shelton was thus properly subject to § 2K2.1(b)(6)(B).

III.    The ACCA error also moots Shelton's arguments that his sentence was procedurally and substantively unreasonable. In any case, Shelton's procedural claim is unpreserved, and he has not shown plain error. Nor was Shelton's sentence substantively unreasonable. In particular, the upward variance to concurrent 120-month sentences on the § 922(g)(1) and 922(o) counts was substantively reasonable based on the aggravating factors emphasized by the court: Shelton's dangerous decision to carry an automatic Glock pistol for months, and his serious criminal history. *See, e.g.*, *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007).

IV.    Finally, Shelton's Second Amendment arguments are foreclosed by current precedent, as he admits. *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed* (U.S. Mar. 11, 2025) (No. 24-968); *see* Third Circuit Internal Operating Procedure § 9.1.

16

## ARGUMENT

I.    **Shelton's Pennsylvania Drug-Trafficking Convictions Are Serious Drug Offenses Under the Armed Career Criminal Act, and So the District Court Erred by Not Applying ACCA's 15-Year Minimum Sentence.**

> A. **Under *Brown v. United States*, the Court Erred by Looking to Federal Drug Schedules at the Time of Shelton's Instant Offense, Not at the Time of His Prior State Offenses.**

The district court's ruling that Shelton was not subject to ACCA's 15-year minimum prison sentence rested on, among other premises, its decision that ACCA implicated the federal drug schedules "at the time of commission of the [instant] federal offense" in 2021 rather than at the time of Shelton's predicate Pennsylvania drug convictions.  Appx785-86 (sentencing transcript).  But the Supreme Court later rejected that position in *Brown v. United States*, which held that ACCA implicates the federal schedules "when the defendant committed the [predicate] state crime." 144 S. Ct. 1195, 1202 (2024); *see id.* at 1210.  Under *Brown*, Shelton's Pennsylvania cocaine-trafficking offenses from the 1990s are indisputably serious drug offenses, even though federal drug schedules were amended to exclude ioflupane in 2015.

In *Brown*, the Supreme Court interpreted ACCA's definition of "serious drug offense," which includes a prior state conviction for trafficking "a controlled substance . . . as defined in section 102 of the Controlled Substances Act."  144 S. Ct. at 1200 (quoting 18 U.S.C. §§ 924(e)(1), (e)(2)(A)(ii)).  *Brown* held that a state conviction satisfies ACCA's definition "if it involved a drug that was on the federal

schedules when the defendant possessed or trafficked in it but was later removed." *Id.* at 1201; *see id.* at 1204-06. This interpretation is supported by "precedent and statutory context," including the fact that ACCA takes a "'backward-looking' approach" to a different component of the definition – whether the predicate offense was punishable by "imprisonment for 10 years or more." *Id.* at 1204 (quoting *McNeill v. United States*, 563 U.S. 816, 820 (2011)). *Brown*'s interpretation also "best fulfills ACCA's statutory objectives" of basing the enhancement on prior convictions for "'offenses of a certain level of seriousness that involve violence or an inherent risk thereof.'" *Id.* at 1205 (quoting *Taylor v. United States*, 495 U.S. 575, 590 (1990)). Prior state drug convictions therefore "may qualify as" ACCA predicates "if the federal and state schedules matched when the state crimes occurred," even if those drug schedules later diverged. *Id.* at 1209.

*Brown* shows that Shelton's two Pennsylvania cocaine-trafficking offenses are serious drug offenses, and that the district court erred in finding otherwise. Shelton committed those offenses in 1990 and 1991, PSR ¶¶ 31-32; *see* Appx191-92, 192-93 (state charging documents). At that time, Pennsylvania law was not overbroad because neither Pennsylvania's Schedule II nor the federal Schedule II contained an explicit carveout for ioflupane. *See* 35 Pa. Cons. Stat. § 780-104(2)(i)(4) (eff. Dec. 18, 2000); 21 C.F.R. § 1308.12(b)(4)(ii) (eff. Dec. 10, 2007); *id.* (eff. Aug. 30, 2009). Although the federal Schedule II was amended in 2015 to

18

expressly exclude ioflupane, *see* Schedules of Controlled Substances: Removal of [$^{123}$I]Ioflupane from Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54,715, 54,716 (Sep. 11, 2015) ("Removal of [$^{123}$I]Ioflupane"), that later change is irrelevant under *Brown*. 144 S. Ct. at 1201. In fact, one defendant in *Brown* had committed two state cocaine-trafficking offenses well before ioflupane was removed from federal schedules, just like Shelton – and the Supreme Court held that those offenses were serious drug offenses under ACCA. *Id.* at 1201-02, 1210. At least one Circuit has confirmed that *Brown* "rejected the argument that the delisting of [$^{123}$I]ioflupane prevented a pre-2015 state drug-trafficking conviction from qualifying as a predicate offense under § 924(e)." *United States v. Jackson*, No. 23-1508, 2025 WL 80372, at *6 (6th Cir. Jan. 13, 2025) (unpublished).

*Brown* squarely contradicts Shelton's and the district court's rationale for not applying the ACCA enhancement. Shelton argued below that, to determine whether a prior state drug conviction is an ACCA predicate, courts must look to federal drug schedules "at the time of sentencing." Appx221 (exhibit to brief in support of pretrial motion). The Government argued to the contrary, contending that ACCA required the court to look to federal schedules "at the time of [Shelton's] prior conviction" – that is, in 1992. Appx248 (response to pretrial motion); *see* Appx692-93 (sentencing memorandum); *see also* PSR ¶¶ 31-32. Shelton never disputed below that, if ACCA did indeed implicate the pre-2015 drug schedules (as *Brown* later

19

showed), his cocaine-trafficking predicates would be serious drug offenses. *See* Appx187-94,195-230, 272-07 (pretrial filings); Appx643-49 (objection to Presentence Report). And the court's refusal to apply the ACCA enhancement rested directly on its erroneous view that it was "immaterial that [Shelton's] prior convictions occurred before 2015." Appx786 (sentencing transcript). *Brown* shows that the court erred in applying a statutory range of 0 to 10 years in prison on the § 922(g)(1) count, rather than ACCA's 15-year minimum sentence, 18 U.S.C. § 924(e), and this Court must therefore vacate Shelton's sentence.

### B. Shelton's Cocaine-Trafficking Convictions Are Also Serious Drug Offenses for Two Additional Reasons.

Independent of *Brown*, Shelton was subject to ACCA for two independent reasons. First, Pennsylvania drug schedules at the time of Shelton's state offenses excluded ioflupane and were not overbroad even compared to post-2015 federal schedules. 35 Pa. Cons. Stat. § 780-104(2)(i)(4). Second, Shelton was required to show a "realistic probability" of a Pennsylvania ioflupane prosecution, which he has not done and cannot do. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

### 1. Pennsylvania Drug Schedules Were Not Overbroad at the Time of Shelton's State Offenses Because They Did Not Prohibit Ioflupane.

The district court ruled that "Pennsylvania's definition of cocaine" was "broader than the [federal] Controlled Substances Act definition of cocaine" at the time of Shelton's instant federal offense in 2021 because, in the court's view,

"Pennsylvania criminalize[d] ioflupane while the Controlled Substances Act does not." Appx782-83 (sentencing transcript). That reasoning was integral to the court's ruling that Shelton was not subject to ACCA. Appx782-83, 784-85. But that conclusion was incorrect: ioflupane is a "decocainized" "extract[]" that was excluded from Pennsylvania's drug schedules at the time of Shelton's offenses, and still is excluded today. 35 Pa. Cons. Stat. § 780-104(2)(i)(4); *see* Opening Brief for Appellant/Cross-Appellee United States of America, *United States v. Gamble*, Nos. 23-2105 & 23-2199, Dkt. No. 43, at 27-36 (3d Cir. Dec. 5, 2024). Shelton's Pennsylvania convictions were thus ACCA predicates for that independent reason.

Ioflupane, the substance at the center of Shelton's objections, is a radioactive chemical used in medicine that is a derivative of coca leaves. *See* Removal of [$^{123}$I]Ioflupane, 80 Fed. Reg. at 54,716. Ioflupane is a separate substance from cocaine, with a different chemical formula and structure. *See* Appx266 (declaration of Roscoe Bennett).

Pennsylvania's Schedule II covers the following category of substances (in language that has not been amended since the state legislature enacted it in 1972, *see* Act No. 64, 972 Pa. Laws 233, 241):

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but shall not include decocainized coca leaves or extracts of

> coca leaves, which extracts do not contain cocaine or
> ecgonine.

35 Pa. Cons. Stat. § 780-104(2)(i)(4). Contemporary dictionaries defined "extract" as either "something extracted" or "a solution or preparation containing the active principles of a drug, plant juice, or the like." "Extract," *Random House Dictionary* (1971 ed.). Cocaine is an "extract" of coca leaves in both of these senses, *see United States v. Brigman*, 350 F.3d 310, 312 (3d Cir. 2003), while ioflupane is derived from cocaine (an extract) but does not contain any cocaine or ecgonine. *See* Removal of [123I]Ioflupane, 80 Fed. Reg. at 54,716; Appx266 (Bennett declaration). Ioflupane is therefore a "decocainized . . . extract[] of coca leaves," 35 Pa. Cons. Stat. § 780-104(2)(i)(4), and is not a controlled substance under Pennsylvania law.

This interpretation of Pennsylvania law is not undermined by the fact that the federal Schedule II, which otherwise contains similar language to Pennsylvania's drug schedules, was amended in 2015 to add an express exclusion for ioflupane. *See* Removal of [123I]Ioflupane, 80 Fed. Reg. at 54,716; *see* 21 C.F.R. § 1308.12(b)(4)(ii). The district court posited that neither the federal and Pennsylvania carve-outs excluded ioflupane because there otherwise "would be no need for the Controlled Substances Act to expressly exclude ioflupane." Appx784 (sentencing transcript). But that reasoning is misguided because, under the categorical approach, Pennsylvania's schedules – not federal schedules – control whether Shelton's convictions are serious drug offenses. *Taylor*, 495 U.S. at 599-

602. In addition, the DEA's 2015 statement did not mention the federal schedule's exception for "decocainized" substances, and the federal schedule refers to "extractions," rather than "extracts." *See* Opening Brief for the United States, *Gamble*, at 32-34.

The district court also erred repeatedly by referring to the "definition of cocaine" in Pennsylvania and federal drug schedules. Appx782 (sentencing transcript). In fact, neither schedule attempts to define "cocaine"; instead, both schedules describe a prohibited category that contains "coca leaves" and certain related substances, and that (as shown) excludes ioflupane. 35 Pa. Cons. Stat. § 780-104(2)(i)(4); 21 C.F.R. § 1308.12(b)(4). And while the district court cited several judicial opinions in support, *see* Appx782-83, those authorities are either nonbinding, dicta, or both. *See* Opening Brief for the United States, *Gamble*, at 34-36. Shelton's cocaine-trafficking convictions therefore qualify as serious drug offenses under ACCA even using the federal schedules at "the time Mr. Shelton committed his instant federal offense in 2021." Appx786 (transcript).

## 2. Because Pennsylvania Has Never Prosecuted (and Is Unlikely to Prosecute) Ioflupane Trafficking, Shelton Has Not Met and Cannot Meet the Realistic Probability Test.

In the alternative, even if Pennsylvania's Schedule II does not unambiguously exclude ioflupane, it is at worst ambiguous, and Shelton's cocaine-trafficking convictions are ACCA predicates because he cannot show a "realistic probability"

of a state prosecution for trafficking ioflupane.  *See* Opening Brief for the United States, *Gamble*, at 37-41.  For a state drug statute to be overbroad under the categorical approach, a defendant ordinarily must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to" a non-federal controlled substance.  *Duenas-Alvarez*, 549 U.S. at 193.  A defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."  *Id.*

Here, Shelton did not dispute below that Pennsylvania has never prosecuted ioflupane trafficking under § 780-104(2)(i)(4) and that it is unlikely ever to do so.  Appx187-230.  As the Government showed, the Pennsylvania State Police crime laboratories are "not aware of any criminal prosecution in the Commonwealth of Pennsylvania that has involved any derivative of coca leaves, including ioflupane, other than cocaine."  Appx267 (Bennett declaration).  It is thus undisputed that Shelton cannot show a realistic probability of an ioflupane prosecution.

The district court ruled that Shelton did not need to make such a showing because "the [realistic] probability test is not applicable" here.  Appx785 (transcript).  But that ruling was incorrect.  *See* Opening Brief for the United States, *Gamble*, at 38-40.  True enough, the Supreme Court once found that a defendant did not need to show a realistic probability of a state prosecution in cases when there was "no overlap to begin with" between the relevant state and federal statutes.  *United States*

24

*v. Taylor*, 142 S. Ct. 2015, 2025 (2022); *see also Salmoran v. Attorney General*, 909 F.3d 73, 81 (3d Cir. 2018).   But those concerns are not present here because the relevant Pennsylvania and federal provisions do overlap: both of them prohibit "any . . . derivative . . . of coca leaves" with certain exceptions.  35 Pa. Cons. Stat. § 780-104(2)(i)(4); 21 C.F.R. § 1308.12(b)(4).   Because Shelton cannot show a "realistic probability" of a Pennsylvania ioflupane prosecution, his prior cocaine-trafficking convictions are ACCA predicates for that additional reason.

### C. Because of the ACCA Error, Shelton's Sentence Must Be Vacated on Both Counts.

Both under *Brown* and for the other reasons given above, the district court erred in finding that Shelton was not subject to ACCA.  On the § 922(g)(1) count, Shelton was subject to a statutory range of 15 years to life in prison, *see* 18 U.S.C. § 924(e), rather than the then-applicable non-ACCA statutory range of 0 to 10 years. *See* PSR Supplemental Addendum; 18 U.S.C. § 924(a)(2) (eff. Dec. 21, 2018).

The ACCA error also affected Shelton's advisory Sentencing Guideline range on both counts, which were grouped together under U.S.S.G. § 3D1.2.  Appx787; PSR ¶ 19.  Under ACCA and U.S.S.G. § 4B1.4, Shelton was and is properly subject to a total advisory Guideline range of 210 to 262 months.  PSR ¶¶ 26-28, 47, 92; *see* U.S.S.G. §§ 4B1.4(b)(3)(A), (c)(2).  But the court applied a non-ACCA Guideline range of only 51 to 63 months on each count under U.S.S.G. § 2K2.1.  Appx787-88 (sentencing transcript); *see* PSR ¶¶ 20-25; PSR Supplemental Addendum.

The ACCA error requires this Court to vacate Shelton's sentence on both counts at Crim. No. 21-232 and remand for resentencing. Most obviously, the 10-year prison sentence on the § 922(g)(1) count, Appx17 (judgment), is below ACCA's 15-year statutory minimum.

Shelton's 10-year sentence on the § 922(o) count must also be vacated. Instead of 51 to 63 months, Shelton's correct Guideline range on that count was § 922(o)'s statutory maximum of 10 years (120 months) in prison, which was rounded down from 210 to 262 months. *See* U.S.S.G. §§ 4B1.4(b)(3)(A), (c)(2). And this Guideline error was not harmless. *See* Fed. R. Crim. P. 52(a). Even though the court imposed § 922(o)'s statutory maximum sentence of 10 years in prison followed by three years of supervised release, it could have imposed an even higher sentence by running the prison terms on the two counts consecutively rather than concurrently – as the Government requested below. Appx804-05 (sentencing transcript). Ignoring the error would also affect the Government's "substantial rights" in this appeal, Fed. R. Crim. P. 52(a), by forcing it to defend against Shelton's challenges to his sentence on the § 922(o) count on grounds that would be mooted if this Court corrected the Guideline error. *See infra* Parts II.A, III.A; *see also, e.g.*, *United States v. Payano*, 930 F.3d 186, 191 n.2 (3d Cir. 2019). This Court should therefore vacate Shelton's sentence on both counts and remand for resentencing under the statutory and Guideline ranges that correctly apply under ACCA.

**II.    The U.S.S.G. § 2K2.1(b)(6)(B) Issue Is Moot, and in Any Event Shelton Used His Firearm in "Another Felony Offense" Because He Did Not Act in Self-Defense in the January 2021 Shooting.**

Shelton argues that the court should not have applied the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing or using a firearm "in connection with another felony offense" – but that issue is moot because Shelton's sentence must be vacated due to the ACCA error. *See supra* Part I.  In any event, Shelton did commit another felony offense – aggravated assault and reckless endangerment – when he fired the automatic Glock pistol during the January 24, 2021 incident in front of his mother's house, as his own testimony showed.  Appx529-31, 553-54.  Because Shelton violated his duty to retreat under Pennsylvania self-defense law, *see* 18 Pa. Cons. Stat. § 505, he is subject to the § 2K2.1(b)(6)(B) enhancement.

**A. The ACCA Error Moots the § 2K2.1(b)(6)(B) Issue Because That Issue Does Not Affect the Advisory Sentencing Guideline Range.**

At the threshold, this Court need not and should not consider the Guideline issue because it is mooted by the ACCA error.  Shelton's non-ACCA advisory Guideline range was 51 to 63 months with the four-level § 2K2.1(b)(6)(B) enhancement, as opposed to 33 to 41 months without the enhancement.  Appx787-88 (sentencing transcript); *see* PSR ¶¶ 20-25; U.S.S.G. ch. 5 pt. A (sentencing table). But Shelton's correct Guideline range – 210 to 262 months – is much higher, and is not affected by § 2K2.1(b)(6)(B) because U.S.S.G. § 4B1.4 requires a base offense level of at least 34 for ACCA offenders who (like Shelton) possessed a machinegun.

U.S.S.G. § 4B1.4(b)(3)(A); *see supra* Part I.C.  Shelton's challenge to the § 2K2.1(b)(6)(B) enhancement is therefore moot.

Objections to Guideline enhancements need not be addressed when they do not affect the Guideline range.  This Court has explained that challenges to Guideline enhancements are "moot" when, because of a ruling on the career-offender enhancement, the defendant's "final offense level," and thus his Guideline range, "would remain unaffected" by the challenged rulings.  *United States v. Abdullah*, 905 F.3d 739, 749-50 (3d Cir. 2018); *accord United States v. Wilson*, 880 F.3d 80, 88 n.11 (3d Cir. 2018).  The same principle applies in the ACCA context.  *See, e.g.*, *United States v. Golden*, No. 21-2618, 2023 WL 2446899, at *4 n.6 (3d Cir. Mar. 10, 2023) (unpublished); *United States v. Limehouse*, 386 F. App'x 109, 111 & n.3 (3d Cir. 2010) (unpublished).  Because § 2K2.1(b)(6)(B) does not affect Shelton's correct Guideline range, this Court need not and should not address that issue.

## B. In the Alternative, the Court Correctly Applied the Enhancement Because Shelton Used His Firearm in "Another Felony Offense."

If this Court reaches the issue, it should affirm the § 2K2.1(b)(6)(B) enhancement because Shelton used a firearm "in connection with another felony offense."  Specifically, in the January 2021 shooting in front of his mother's house, Shelton used his automatic Glock pistol to commit aggravated assault and reckless endangerment, 18 Pa. Cons. Stat. §§ 2702(a)(1), (a)(4), 2705, and he did not act in justifiable self-defense under Pennsylvania law – as the Government argued below.

28

Appx695-96 (sentencing memorandum); *see* 18 Pa. Cons. Stat. § 505.  Although the district court imposed the enhancement for other reasons, *see* Appx778-79 (sentencing transcript), this Court may affirm on any ground supported by the record, *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018), and should do so here.[5]

### 1. When the Government Overcomes a Self-Defense Claim by a Preponderance of Evidence, § 2K2.1(b)(6)(B) Applies.

Section 2K2.1(b)(6)(B) "requires finding, by a preponderance of the evidence, that the defendant used or possessed a firearm; that the defendant committed another felony offense," even if no conviction resulted; "and that the firearm facilitated, or had the potential of facilitating, the felony offense."  *United States v. West*, 643 F.3d 102, 110 (3d Cir. 2011).  Section 2K2.1(b)(6)(B) is an example of the general rule

---

[5] The Government agrees with Shelton that the district court's two stated reasons for applying the enhancement were unsound.  *See* Br. at 32-38.  First, the court's prior rejection of Shelton's self-defense argument as to the instant §§ 922(g)(1) and 922(o) charges did not resolve the § 2K2(b)(6)(B) enhancement, which rested not on Shelton's mere possession of the pistol but on his shooting it in the January and March 2021 incidents.  PSR ¶ 21; *see* U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(C); *contra* Appx778 (sentencing transcript).  Second, Shelton's possession of a machinegun under § 922(o) was not "a separate felony offense" under § 2K2.1(b)(6)(B) because it was one of the instant offenses that had triggered the Guideline.  PSR ¶¶ 8, 19-21; *see* U.S.S.G. § 2K2.1(b)(6)(B) cmt. 14(C); *contra* Appx779 (sentencing transcript).

Additionally – and although the district court did not reach the issue, Appx778-79 – the Government no longer argues that Shelton committed "another felony offense" under § 2K2.1(b)(6)(B) by committing aggravated assault or reckless endangerment during the March 17, 2021 incident.  18 Pa. Cons. Stat. §§ 2702(a)(1), (a)(4), 2705; *cf.* Br. at 24-31.  But as discussed herein, Shelton's conduct in the January 24, 2021 incident is sufficient to affirm the enhancement should this Court reach the issue.

29

that, at sentencing, the government's burden of proof is only a preponderance of the evidence. *See United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014).

The enhancement requires "[m]ore than mere possession of the firearm" during the other felony, but is satisfied if "brandishment or other use . . . was an integral aspect of the predicate offense." *United States v. Hester*, 910 F.3d 78, 90 (3d Cir. 2018) (quoting *United States v. Keller*, 666 F.3d 103, 106 (3d Cir. 2011)). Section 2K2.1(b)(6)(B) thus applies when a defendant commits Pennsylvania aggravated assault under 18 Pa. Cons. Stat. § 2702(a)(1) or § 2702(a)(4) by "discharging a weapon in the direction of an occupied car." *United States v. Bentley*, No. 22-1834, 2023 WL 2300387, at *1 (3d Cir. Mar. 1, 2023) (unpublished). And the Guideline also applies when shooting a firearm amounts to reckless endangerment of another person under 18 Pa. Const. Stat. § 2705. *United States v. Fitzgerald*, No. 08-2608, 2009 WL 1385930, at *3 n.1 (3d Cir. May 19, 2009) (unpublished), *see, e.g.*, *Commonwealth v. Hartzell*, 988 A.2d 141, 143 (Pa. Super. 2009) (§ 2705 satisfied by "the actual discharging of a weapon numerous times in the vicinity of others").[6]

---

[6] Reckless endangerment under § 2705 is a Pennsylvania second-degree misdemeanor, punishable by up to two years in prison. *See* 18 Pa. Cons. Stat. § 1104. Reckless endangerment is thus "another felony offense" under § 2K2.1(b)(6)(B), which Guideline commentary defines as an offense other than the instant offense "punishable by imprisonment for a term exceeding one year." *Fitzgerald*, 2009 WL 1385930, at *3 n.1 (quoting U.S.S.G. § 2K2.1 app. n. 14(C)). This Court recently ruled that the Sentencing "Commission's interpretation of

Two Courts of Appeals have held that § 2K2.1(b)(6)(B) does not apply if the defendant establishes a defense of justification or self-defense to the other felony offense. *United States v. Wilson*, 75 F.4th 633, 637 (6th Cir. 2023); *United States v. Eddington*, 65 F.4th 1231, 1238 (10th Cir. 2023); *see also United States v. Price*, 16 F.4th 1263, 1266 (7th Cir. 2021) (dicta). As those courts have explained, if a defendant "satisfie[s] his burden of production," the Government must disprove the self-defense claim "by a preponderance of the evidence" to prove the enhancement. *Wilson*, 75 F.4th at 637. At least two district courts in this Circuit have followed suit. *United States v. Naylor*, Crim. No. 21-398, 2024 WL 617659, at *4 (W.D. Pa. Feb. 14, 2024), *appeal docketed*, No. 24-1490 (3d Cir. Mar. 18, 2024); *United States v. Riley*, 574 F. Supp. 3d 248, 259 (E.D. Pa. 2021). The Government thus assumes that § 2K2.1(b)(6)(B) does not apply when a defendant has a valid self-defense claim to the "other felony."

Under Pennsylvania's self-defense statute, "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa. Cons. Stat. § 505(a). The

---

'another felony offense' is reasonable under" *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), and thus worthy of deference. *United States v. McIntosh*, 124 F.4th 199, 214 (3d Cir. 2024) (discussing cmt. n.14(B)); *cf. id.* at 217 (Matey, J., concurring in the judgment) (finding "another felony offense" to be unambiguous).

required elements of the defense "are that the defendant (a) reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) was free from fault in provoking the difficulty which culminated in the [use of force]; and (c) did not violate any duty to retreat." *Commonwealth v. Sanchez*, 82 A.3d 943, 980 (Pa. 2013); *see* 18 Pa. Cons. Stat. § 505(b)(2). In Pennsylvania courts, once a defendant introduces some evidence to support a self-defense claim, the Commonwealth bears the burden of disproving the defense beyond a reasonable doubt. *Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012). (However, in the § 2K2.1(b)(6)(B) context, that standard is overridden by the general rule that Guideline enhancements need only be proved by a preponderance of the evidence. *Napolitan*, 762 F.3d at 309.)

Deadly force "cannot be used where there is an avenue of retreat, if the defendant knows the avenue of retreat is available." *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009). A person need not retreat if "a reasonably prudent person would conclude that such a decision would increase his or her exposure to the threatened harm." *Id.* (citing *Commonwealth v. Bayard*, 309 A.2d 579 (Pa. 1973)). However, "[i]t is the duty of one who is assailed to flee, if flight is possible," and deadly force may be used only if "no other way of escape from the danger [is] open." *Commonwealth v. Hawkins*, No. 1184 MDA 2012, 2014 WL 10986149, at *4 n.6 (Pa. Super. Feb. 7, 2014) (unpublished) (quoting

*Commonwealth v. Collazo*, 180 A.2d 903, 907 (Pa. 1962)).  "[B]efore using deadly force, 'a person must have no probable means of escape; he must "retreat to the wall."'"  *Commonwealth v. Johnson*, 245 A.3d 1049, at *3 (Pa. Super. 2020) (unpublished) (table) (quoting 18 Pa. Cons. Stat. § 505 cmt.).  If an assailant displays or uses a firearm or deadly weapon, Pennsylvania law provides exceptions to a person's duty to retreat – but those exceptions do not apply if the person himself is "in illegal possession of a firearm."  18 Pa. Cons. Stat. § 505(b)(2.3).

### 2. Shelton Did Not Act in Self-Defense in the January 2021 Shooting.

The record shows by a preponderance of the evidence that Shelton was subject to § 2K2.1(b)(6)(B) because he violated his duty to retreat in the January 2021 shooting and thus did not act in justified self-defense.  Shelton testified that, in the January 2021 incident, he had parked and was "walking towards [his mother's] house," "in the grass going towards the porch," when he heard one or two gunshots, fired from a passing car.  Appx530.  Shelton's sister Abena testified that, at the time of those gunshots, she was standing in the house's front doorway.  Appx496.  After those initial shots, Shelton remained in the front yard while the assailant's car drove further down the street (a dead-end street), turned around, and returned past the house; when Shelton allegedly saw a person leaning out of the car window with a gun, he shot at the car with his automatic Glock pistol.  Appx530-31 (Shelton).

ShotSpotter notifications for the incident showed that "the initial shot and the return volley shots" occurred "one minute apart." Appx409 (Det. Song). Shelton's sister Abena testified similarly, saying that Shelton opened fire "probably like a minute" after the first shots – enough time for her to shut the front door, check on a child she was babysitting, and then reopen the door before Shelton returned fire. Appx505; *see* Appx496-97.

Shelton thus violated his duty to retreat because he could have avoided danger "with complete safety" just by going inside the house. 18 Pa. Cons. Stat. § 505(b)(2)(ii). As a satellite image shows, the house's front yard measures less than thirty feet from the street to the porch. Appx599. Thus, in the minute after the initial shots, Shelton easily could have retreated through the front door. Alternatively, Shelton could have retreated to either side of the house and down the hill behind the house. *See* Appx514-15 (Abena Shelton testimony).

Shelton also "kn[ew]" at the time of the initial shots that he had a reason to retreat, satisfying the other requirement of Pennsylvania law. 18 Pa. Cons. Stat. § 505(b)(2)(ii). Shelton testified that, by January 2021, he was in fear for his life: he purportedly had "credible information that some guys had put some money on me," and he thus regularly carried his automatic Glock pistol. Appx528, 551. Shelton also immediately knew that the assailant was targeting him: the initial shots were fired at a white SUV that had just left Shelton's mother's house and that looked

34

identical to another car that Shelton owned.  Appx529-31.  And given his familiarity with the dead-end street, Appx553-54, Shelton knew that the assailant's car would have to return past the house.  Rather than safely retreat, Shelton chose to wait for the assailant and shoot at him with the automatic pistol he illegally possessed.  That choice was not protected by Pennsylvania law.

Pennsylvania courts have rejected self-defense claims in similar situations.  In *Commonwealth v. Hawkins*, the defendant engaged in a fistfight with one VanHook and then crossed the street; VanHook and a friend followed, the friend punched Hawkins, and Hawkins then fatally stabbed the friend.  2014 WL 10986149, at *1. "Even though Hawkins was roughly one block away from his home, he did not go there; he chose to remain in the immediate area after his fight with VanHook concluded."  *Id.* at *5.  The Superior Court explained that this evidence, taken in the light most favorable to the Commonwealth, allowed a finding beyond a reasonable doubt that Hawkins violated his duty to retreat by "linger[ing] on the sidewalk in the moments following the scuffle with VanHook."  *Id.*  In the same way, Shelton – who was much closer to safety than Hawkins was – violated his duty to retreat by waiting in the yard after the initial shots for the assailant to pass by again.

Likewise, in *Commonwealth v. Johnson*, the defendant "ran a short distance after shooting" one person, then – when another man, Arroyo, fired into the air to get the defendant to stop – "stopped, turned, and shot four or five times at Arroyo."

245 A.3d 1049, at *3.  "From this evidence, the jury could reasonably conclude that [the defendant] failed to retreat" and did not shoot at Arroyo in self-defense. *Id.*; *see also, e.g.*, *Commonwealth v. Murray*, 260 A.3d 161, at *4 (Pa. Super. 2021) (unpublished) (table).  Because the evidence shows (by a preponderance, *see Napolitan*, 762 F.3d at 309) that Shelton could have retreated "with complete safety" in the January 2021 incident but decided not to, 18 Pa. Cons. Stat. § 505(b)(2)(ii), he was properly subject to the § 2K2.1(b)(6)(B) enhancement.[7]  Although the issue is moot because of the ACCA error, *see supra* Parts I, II.A, this Court should thus uphold the § 2K2.1(b)(6)(B) enhancement if it reaches the question.

---

[7] Even if the record were not sufficient for to affirm the enhancement based on the January 2021 shooting (which it is), this Court should, at worst, remand to the district court for further factfinding rather than reversing the enhancement entirely.

**III.    Shelton's Procedural and Substantive Objections to His Non-ACCA Sentence are Moot, and Are Incorrect in Any Event.**

Shelton also claims that the district court's sentence – concurrent 120-month prison sentences on the § 922(g)(1) and 922(o) counts, and a consecutive 57 months for the supervised release violation – was "procedurally and substantively unreasonable." Br. at 39. But as with Shelton's Guideline objections, these issues are moot because the sentence was erroneous under ACCA, requiring vacatur and remand. *See supra* Part I. At any rate, Shelton's procedural claim merely repackages his incorrect Guideline objection, and his substantive arguments also fail.

**A. The ACCA Error Moots Any Claim of Procedural and Substantive Error as to Shelton's Current Sentence.**

Because Shelton's sentence must be vacated under ACCA, this Court "need not reach" his arguments "related to the supposed procedural and substantive unreasonableness of" his sentence. *United States v. Winebarger*, 664 F.3d 388, 397 n.9 (3d Cir. 2011). As explained, ACCA dramatically increases Shelton's statutory range on the § 922(g)(1) count from a range of 0 to 10 years in prison to a range of 15 years to life. *See* 18 U.S.C. § 924(e). Shelton's advisory Sentencing Guideline range also increased from only 51 to 63 months without ACCA to 210 to 262 months under ACCA, capped at 120 months for the § 922(o) count. *See supra* Part I.C.

In imposing sentence, the district court naturally considered the non-ACCA statutory and Guideline ranges it had calculated, *see* Appx826-27, 834-35

(sentencing transcript), just as the Sentencing Reform Act required. *See* 18 U.S.C. § 3553(a)(3), (a)(4). But because those statutory and Guideline ranges were erroneous (by a significant margin), the procedural and substantive aspects of the sentencing that Shelton now challenges will be irrelevant on remand. *See* Br. at 39-50. Indeed, the court took pains to justify its upward variance from the advisory 51-to-63 month Guideline range to concurrent 120-month prison terms on the §§ 922(g)(1) and 922(o) counts, Appx823-30 (transcript) – but that sentence was *unlawfully low* under ACCA, and was more than seven years below the bottom of the advisory Guideline range.

In an analogous situation, after vacating a sentence that rested on the incorrect statutory range, this Court said that it "need not address" the defendant's arguments that the district court "procedurally erred by not adequately explaining its upward variance" or that the sentence "was substantively unreasonable." *Payano*, 930 F.3d at 191 n.2; *accord Winebarger*, 664 F.3d at 397 n.9. So too here: this Court should not consider Shelton's procedural and substantive objections to his current sentence and should remand for resentencing under ACCA.

### B. To the Extent Shelton Argues That the Sentence Was Procedurally Unreasonable, He Is Incorrect, and Any Error Was Not Plain.

Shelton briefly asserts that his sentence was "procedurally . . . unreasonable." Br. at 39. But the only "procedural error" that Shelton identifies is the district court's purported "misapplication of the law of justification" under U.S.S.G.

§ 2K2.1(b)(6)(B). Br. at 40. That claim of Guideline error – which is incorrect, *see supra* Part II – is distinct from a claim of procedural unreasonableness, which requires that the court failed to "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Ausburn*, 502 F.3d 313, 329 (3d Cir. 2007). Shelton does not argue that the court failed to respond to any of his sentencing arguments, *see* Br. at 39-50; he has thus waived any such claim and may not raise it on reply. *Bastardo-Vale v. Attorney General*, 934 F.3d 255, 268 (3d Cir. 2019) (en banc).

Even if Shelton had preserved a procedural unreasonableness claim, he would not prevail – in part because he did not make such a procedural objection at sentencing. *See* Appx823-36 (sentencing transcript). To be preserved, a procedural "error of failure to give meaningful consideration [to an argument] must be brought to the district court's attention through an objection." *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc). Because Shelton did not object, the plain-error standard of review would apply to any claim of procedural unreasonableness. *Id.* at 258.

Here, there was no procedural error at all, let alone a plain one. Shelton's sentencing memorandum requested a 30-month prison sentence on the §§ 922(g)(1) and 922(o) offenses due to "his employment and family relationships" and other personal factors. Appx670. But at the sentencing hearing, Shelton asked only for

"a [G]uideline range sentence" within the court's calculated range of 51 to 63 months, and clarified (in response to a question from the court) that he was "withdrawing [his] request for a downward variance" to 30 months. Appx810 (transcript). In arguing for a sentence within the Guideline range, Shelton said simply that "the Court is more than aware of what the facts are in this case," including "his history and his experience on" supervised release. Appx810. The district court responded to that claim (and justified its upward variance) by pointing out that Shelton had "a history of violating provisions of court supervision and returning to criminal conduct" and was "not learning his lesson." Appx829.

Because the court did "acknowledge and respond to" Shelton's argument that his personal characteristics and performance on supervised release justified a sentence within the Guideline range, it did not impose a procedurally unreasonable sentence. *Ausburn*, 502 F.3d at 329. Moreover, at the second prong of the applicable plain-error test, any procedural error was not plain. *See United States v. Aguirre-Miron*, 988 F.3d 683, 687 (3d Cir. 2021). Because of Shelton's withdrawal of his request for a downward variance and his very general arguments for a sentence within the Guideline range, Appx809-11 (sentencing transcript), it is not "plain" – meaning "'clear' or, equivalently, 'obvious'" – that the district court erred in responding to those arguments. *United States v. Olano*, 507 U.S. 725, 734 (1993).

Thus, even if Shelton's brief properly made a procedural unreasonableness claim, it would not succeed.

### C. Shelton's Sentence Was Not Substantively Unreasonable.

Shelton's concurrent 120-month statutory-maximum prison terms for his § 922(g)(1) and § 922(o) offenses, and consecutive 57-month sentence for his supervised release violation, were not substantively unreasonable and cannot be overturned on the applicable abuse-of-discretion standard. *See, e.g.*, *United States v. Clark*, 726 F.3d 496, 500 (3d Cir. 2013); *see also United States v. Bungar*, 478 F.3d 540, 542-44 (3d Cir. 2007) (applying ordinary substantive reasonableness standard to revocation of supervised release). Under that standard, this Court will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). And when a court varies upward, as it did here, this Court "cannot presume that a sentence is unreasonable simply because it falls outside the advisory Guidelines range." *Id.* at 567. Shelton's sentence was not unreasonable, even under the incorrect non-ACCA statutory and Guideline ranges calculated below.

As the district court explained, Shelton's 120-month sentence for the § 922(g)(1) and § 922(o) convictions was "appropriate under the [18 U.S.C. §] 3553(a) factors" and "sufficient, but not greater than necessary, to serve the

41

purposes of sentencing." Appx827, 829 (sentencing transcript). First, "the nature and circumstances" of Shelton's offenses were extremely serious and warranted a significant sentence. 18 U.S.C. § 3553(a). Shelton himself testified at the pretrial hearing that he regularly carried the Glock pistol on his person for roughly four months, and equipped it with a "Glock switch" that made it fully automatic for at least three months. Appx382, 528-29, 551-52, 558-59. As the Government showed, an automatic Glock pistol fires "drastically" more quickly than a semiautomatic pistol, and has an "inherent inaccuracy" due to its strong recoil. Appx795 (sentencing transcript); *see* Appx792-95. Shelton endangered the public by choosing to carry "this very, very dangerous type of weapon" "on multiple occasions when he was going about his daily business," underscoring the seriousness of his offense and the need for just punishment. Appx828; *see* 18 U.S.C. § 3553(a)(2)(A).

The court also rightly deemed it serious that Shelton actually "used this machine gun more than once." Appx828. Shelton could have injured or killed innocent bystanders on each occasion – neighbors in the January 2021 shooting, and other motorists in the March 2021 shooting – in addition to his assailants. *See, e.g.*, Appx530-37, 550-57 (pretrial hearing transcript). Because Shelton's possession and use of his machinegun actually "did endanger the public," Appx828, a lengthy sentence was appropriate "to protect the public from further crimes of the defendant" and "to afford adequate deterrence." 18 U.S.C. § 3553(a)(2)(A), (B).

Shelton asserts that the court "placed inordinate weight on the seriousness of [his] conduct at the expense of the reason motivating the conduct (self-defense)," Br. at 41, but that is incorrect. At the threshold, Shelton did not act in self-defense in the January 2021 incident, when he waited in the yard to shoot at his assailant rather than retreat into the house. *See supra* Part II.B.2. Moreover, regardless of whether Shelton was justified by self-defense *in the moment* in returning fire during the January or March 2021 incidents, he was not justified *ex ante* in choosing to illegally carry a machinegun for four months. *See* Appx608-13 (opinion) (rejecting Shelton's justification defense to the §§ 922(g)(1) and 922(o)). Even crediting Shelton's claim that he feared for his life over those months, "possession of a firearm by a convicted felon in the hope of deterring an assault is unlawful" unless "the immediacy and specificity of the threat is compelling." *United States v. Alston*, 526 F.3d 91, 96 (3d Cir. 2008). Federal law prohibited Shelton from arming himself with a firearm, rather than "seek[ing] a legal alternative" such as "contacting the police" (which he never did, even after the two shooting incidents). *Id.* at 97. The court was entitled to consider that Shelton's especially culpable choice of weapon – a machinegun – foreseeably "did endanger the public," and to conclude that his behavior was "very dangerous to the community, to the public." Appx828, 829.

Shelton also objects that the seriousness of his conduct "was fully accounted for by the [G]uidelines." Br. at 43; *see* Br. at 42-45. But this too is wrong. Shelton's

four-level enhancement under § 2K2.1(b)(6)(B) would apply to anyone who "possessed any firearm or ammunition" in connection with a felony – not just those who *fired* a gun *unjustifiably*, as Shelton did in the January 2021 incident. *See supra* Part II.B.2. And although Shelton's Guideline range reflected his possession of a machinegun, it did not reflect his choice to carry that machinegun regularly "when he was going about his daily business" for three months. Appx828 (sentencing transcript). Shelton's cited out-of-circuit cases thus do not support reversal because "the district court noted precisely those factors that differentiate [Shelton's] offense from the 'run-of-the-mill' felon-in-possession offense contemplated by the guidelines." *United States v. Rivera-Santiago*, 919 F.3d 82, 86 (1st Cir. 2019).

Beyond the seriousness of Shelton's offense, the district court also properly considered Shelton's "history and characteristics, in particular the seriousness of his criminal history, which does include multiple prior drug-trafficking convictions." Appx828-29. Indeed, Shelton had possessed the machinegun while on supervised release for a 2010 federal heroin-trafficking conviction, PSR ¶ 43, and his two cocaine-trafficking convictions from the 1990s showed the deep-seated nature of his criminal conduct. PSR ¶¶ 31-32. Shelton's criminal history also included a prior Pennsylvania conviction for carrying a firearm without a license, PSR ¶ 39, as well as numerous convictions involving high-speed car chases and reckless driving – and one for homicide by vehicle in an extremely serious DUI. PSR ¶¶ 33, 38, 39, 40.

That consistent history of reckless behavior further increased the risk from Shelton's possession of a machinegun, and justified the court's observation that Shelton "is not learning his lesson." Appx829; *contra* Br. at 45-50. Shelton claims that his "criminal history is fully factored into the [G]uideline range," Br. at 45, but that is demonstrably false. Not only were Shelton's prior Pennsylvania cocaine-trafficking and firearm convictions too old to be assigned criminal history points, *see* PSR ¶¶ 31, 32, 39, but Shelton's history of drug offenses qualified him for a much higher statutory and Guideline range under ACCA. *See supra* Part I.

Despite his criticism of the district court's discussion of aggravating factors, Shelton cites few mitigating factors in response. Br. at 39-50. Shelton argues only that, after his release to supervision in 2018, he "made strides in re-connecting with his family, overcoming his reliance on drugs and alcohol, and obtaining employment" (in addition to illegally arming himself with the automatic Glock pistol). Br. at 48. But the district court was entitled to discount those positive factors in light of Shelton's dangerous decision to "return[] to criminal conduct" by carrying an automatic pistol for months, especially in light of his lengthy criminal history. Appx829 (sentencing transcript). "[A] district court's failure to give mitigating factors the weight a defendant contends they deserve" does not "render[] the sentence unreasonable." *Bungar*, 478 F.3d at 546. Because "reasonableness is a range, not a point," *United States v. Kluger*, 722 F.3d 549, 567 (3d Cir. 2013)

(quoting *United States v. Cooper*, 437 F.3d 324, 332 n.11 (3d Cir. 2006)), the district court's upward variance to concurrent 10-year prison terms on the § 922(g)(1) and § 922(o) counts was not substantively unreasonable.

For the same reasons, Shelton's 57-month prison term for his supervised release violations – which Shelton does not separately address, *see* Br. at 39-50 – was also substantively reasonable. That sentence was at the high end of the advisory Guideline range for the revocation sentence, *see* Appx834 (sentencing transcript), and "reviewing courts are entitled to presume that a sentence within the advisory Guidelines is reasonable." *United States v. Handerhan*, 739 F.3d 114, 124 (3d Cir. 2014). The district court considered the applicable § 3553(a) factors and explained that, in light of Shelton's serious violation, a 57-month prison term was necessary to protect the public from him and deter further crimes – appropriate considerations for a revocation sentence. Appx834-35. *E.g.*, *United States v. Stevens*, 729 F. App'x 149, 152 (3d Cir. 2018) (unpublished). The breach of trust shown by Shelton's dangerous violation of his supervised release conditions also supported a lengthy revocation sentence. *Bungar*, 478 F.3d at 544; *see also, e.g.*, *United States v. Melvin*, 829 F. App'x 594, 594-95 (3d Cir. 2020) (unpublished). Even under its incorrect ACCA ruling (which renders this issue moot), the district court did not abuse its discretion in its choice of sentence, which was not substantively unreasonable.

**IV.    The Court Correctly Denied Shelton's Motions to Withdraw His Plea and Dismiss the Indictment Because 18 U.S.C. §§ 922(g)(1) and 922(o) Do Not Violate the Second Amendment as Applied to Shelton or on Their Face.**

Shelton claimed below that 18 U.S.C. §§ 922(g)(1) and 922(o) violate the Second Amendment as applied to him, and moved to withdraw his guilty plea and dismiss the indictment on those grounds.  Appx701-17 (motions).  Shelton repeats those claims on appeal, and also argues for the first time that §§ 922(g)(1) and 922(o) are facially unconstitutional.  Br. at 51-66.  But as Shelton eventually admits, his arguments are foreclosed by current law.  Br. at 63-66.  This Court recently held in *United States v. Moore* that "[a] convict completing his sentence on supervised release does not have a Second Amendment right to possess a firearm."  111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed* (U.S. Mar. 11, 2025) (No. 24-968).  The district court thus correctly denied Shelton's motions.

The Second Amendment protects "the right of the people to keep and bear Arms," U.S. Const. amend. II, but that right is not unlimited.  *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008).  As relevant here, *Moore* rejected an as-applied Second Amendment challenge to § 922(g)(1) by a felon who, like Shelton, was on federal supervised release when he possessed a firearm.  *See id.* at 267-68.  *Moore* thus forecloses Shelton's as-applied challenge to § 922(g)(1) – and its holding applies "equally to § 922(o)," as Shelton concedes.  Br. at 64.  *Moore* explained that an as-applied challenge involves "a statute's 'application to a

particular person under particular circumstances'" – and that those "circumstances" include facts beyond the statute's elements, such as the challenger's status on supervised release.  111 F.4th at 272-73 (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc)).  Shelton argues – for preservation purposes only, *see* Br. at 64 – that *Moore* is wrongly decided.  Br. at 51-63, 65-66.  But of course "the holding of a panel in a precedential opinion," such as *Moore*, "is binding on subsequent panels."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (quoting Third Circuit Internal Operating Procedure § 9.1).  Thus, although neither § 922(g)(1) nor § 922(o) mentions supervised release, an as-applied Second Amendment challenge to either statute by a person on supervised release must fail.

Independent of his status on supervised release, Shelton's as-applied challenges also fail because "the Second Amendment does not protect the possession of machine guns," which "are not in common use for lawful purposes."  *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 142 (3rd Cir. 2016); *accord Heller*, 554 U.S. at 624.  Additionally, history and tradition show that the Second Amendment permits the disarmament of a felon with an extensive and serious criminal history.  *See, e.g.*, Brief for Appellee United States of America, *United States v. Schrock*, No. 24-2346, Dkt. No. 36, at 8-13, 19-28 (3d Cir. Feb. 27, 2025).  Under historical tradition, disarmament is justified when a felon continues to present a special danger of misusing firearms.  *Pitsilides v. Barr*,

128 F.4th 203, 208-11 (3d Cir. 2025).   Shelton could thus be disarmed in 2021 because he was dangerous as shown by his criminal history, including his 2010 conviction for trafficking large amounts of heroin, his two 1992 convictions for cocaine trafficking, and his 2000 conviction for carrying a firearm without a license. PSR ¶¶ 31-32, 39, 43; *see, e.g.*, *Pitsilides*, 128 F.4th at 213.

Shelton's facial challenge also fails, in part because his motions below did not preserve a facial challenge.   Appx701, 715.   At any rate, this Court has already rejected a facial challenge to § 922(g)(1).   *Moore*, 111 F.4th at 273 & n.5.   Section 922(o) is also facially constitutional: because it is valid as applied to Shelton and other supervised releasees, Shelton cannot meet his burden as a facial challenger of showing "that no set of circumstances exists under which the Act would be valid." *Id.* (quoting *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024)).

The district court thus correctly denied Shelton's motions to dismiss the §§ 922(g)(1) and 922(o) charges under the Second Amendment – and also correctly denied his motion to withdraw his guilty plea, because Shelton did not and cannot "show a fair and just reason for requesting the withdrawal."   Fed. R. Crim. P. 11(d)(2)(B); *see United States v. James*, 928 F.3d 247, 258 (3d Cir. 2019); *see also* Appx5-13 (memorandum order).   This Court should affirm Shelton's convictions.

## <u>CONCLUSION</u>

For all of these reasons, the Court should affirm Shelton's convictions and should reject his arguments in Appeals No. 24-1302 and 24-1322, but should vacate Shelton's sentence on both counts as urged by the Government in Appeal No. 24-1491, and should remand for resentencing with instructions to apply the statutory enhancement of the Armed Career Criminal Act to the § 922(g)(1) count, and to apply the advisory Guideline calculations applicable for an armed career criminal under U.S.S.G. §§ 4B1.4(b)(3)(A) and (c)(2) at both counts.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

/s/ Adam N. Hallowell
ADAM N. HALLOWELL
Assistant U.S. Attorney

Date:    March 31, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I am an Assistant United States Attorney for the Western District of Pennsylvania, that I am filing the attached Principal and Response Brief for Appellee/Cross-Appellant United States of America, and:

(1)    this Brief complies with the length limitations of Fed. R. App. P. 28.1(e)(2)(B) because this Brief contains 11,540 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), and thus does not exceed the 15,300-word limit;

(2)    this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using a Microsoft WORD 2010 word-processing system and it is in a proportionally-spaced typeface, namely Times New Roman, that is at least 14 points;

(3)    the text of the electronic PDF Brief is identical to the text of the paper copies of the Brief and Appendix; and

(4)    the electronic PDF Brief has been prepared on a computer that is automatically protected by a virus detection program, namely a continuously updated version of McAfee EndPoint Security, and no virus was detected.

/s/ Adam N. Hallowell
Adam N. Hallowell
Assistant U.S. Attorney

Dated:  March 31, 2025

## <u>CERTIFICATION OF FILING AND SERVICE</u>

I hereby certify that on March 31, 2025, I caused the Principal and Response Brief for Appellee/Cross-Appellant United States of America to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) paper filing of an original and six paper copies using postage-prepaid first-class mail.

I also certify that on March 31, 2025, I caused the Brief to be served by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system on:

Renee Pietropaolo, Esq.
Federal Public Defender's Office
Suite 1500
1001 Liberty Avenue
Pittsburgh, PA 15222
*Counsel for Appellant/Cross-Appellee*

I also certify that Counsel for Appellant/Cross-Appellee has consented to electronic service under L.A.R. 31.1(a).

/s/ Adam N. Hallowell
Adam N. Hallowell
Assistant U.S. Attorney

Dated:  March 31, 2025